### UNITED STATES v. LUMPKIN.*

(District Court, N. D. Georgia. November 15, 1921.)

1. **Game ☞7—Treaty regulating killing of birds deals only with migratory birds.**

The treaty with Great Britain regulating the hunting and killing of migratory birds deals only with migratory birds and does not cover others in an effort to protect migratory birds.

2. **Game ☞7—Mourning doves protected by migratory bird treaty, though particular doves do not migrate.**

The treaty with Great Britain regulating the hunting and killing of migratory birds, and providing that it shall cover birds therein specified including doves and wild pigeons, covers the killing of mourning doves, which are migratory in certain parts of the country, though there may be individuals or families that do not migrate and though they may not be migratory at all in a particular part of the country, as the treaty amounts to an agreement that such doves are migratory.

3. **Treaties ☞2—Migratory bird treaty not beyond treaty-making powers, though there be doubt whether birds included have migrated.**

The migratory bird treaty with Great Britain does not transgress the limits of the treaty-making power as applied to mourning doves as to which the evidence raises a doubt as to whether they have migrated or not.

4. **Game ☞9—Migratory character of mourning doves held not a question for the jury.**

The treaty between the United States and Great Britain for the protection of migratory birds declares that doves are migratory, and where the evidence fails to establish that they, or any distinct variety of them, are clearly nonmigratory, it is established as a matter of law that they are migratory birds within the meaning of such treaty, and in a prosecution for hunting or killing mourning doves in violation of the Migratory Bird Treaty Act of July 3, 1918 (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), the question whether the mourning doves hunted or killed may have been resident in any particular state cannot be heard by a jury.

5. **Game ☞7—No defense that particular birds of migratory group did not migrate.**

In a prosecution for unlawfully hunting or killing birds of a species which migrates between the United States and Canada, and which is included within the terms of the treaty between the United States and Great Britain for the protection of migratory birds, it is no defense that the individual bird hunted or killed was not migratory.

6. **Game ☞7—Mourning doves of Georgia are migratory birds.**

The effect of the treaty between the United States and Great Britain for the protection of migratory birds, ratified by the Senate and backed by the Migratory Bird Treaty Act of July 3, 1918 (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), and then reinforced by the interpretation of the Secretary of Agriculture, who was the executive officer selected to enforce it, is to say expressly that the mourning doves of Georgia are migratory.

Charge to the Jury.

7. **Game ☞7—In prosecution for killing mourning doves, question whether they in fact migrated not in issue.**

In a prosecution under the act carrying the migratory bird treaty with Great Britain into effect for killing mourning doves during the closed

---

* This charge is printed at the request of the Department of Justice, the request being based upon the number of cases pending in the federal courts involving similar issues, and the consequent immediate importance and wide interest which attaches to a full expression on the subject involved.

*season* specified in the act and treaty, the question whether the doves killed actually went out of Georgia or were raised in that state, or whether they came from Canada or anywhere else, is not in issue; the treaty being conclusive that mourning doves are migratory birds.

**8. Game ⚖⇒9—No conviction for killing migratory birds unless they were mourning doves as charged in indictment.**

In a prosecution under the act carrying the migratory bird treaty with Great Britain into effect for killing mourning doves within the closed season, defendant cannot be convicted unless the birds killed were mourning doves as charged in the indictment.

Criminal prosecution by the United States against Joseph H. Lumpkin. On motion to submit issues and charge to the jury. Case submitted to the jury.

Robert W. Williams, Sol. Department of Agriculture, of Washington, D. C., and John W. Henley, Asst. U. S. Atty., of Atlanta, Ga., for the United States.

S. C. Upson and H. M. Holden, both of Athens, Ga., for defendant.

### Ruling of Court on Motion to Submit Issues to the Jury.

SIBLEY, District Judge. The substance of this charge is that the defendant hunted and killed mourning doves, migratory birds. That is the language of the indictment, and it is said to be a crime against the United States. The statute making it a crime is the act of Congress approved July 3, 1918 (Comp. St. Ann. Supp. 1919, §§ 8837a–8837m), which prohibits, among other things, the hunting or killing of any migratory bird included in the terms of a convention between the United States and Great Britain for the protection of migratory birds, etc. (39 Stat. 1702), and then enacts that any person, agency, partnership, or corporation who shall violate the provisions of said convention, that is, the treaty, or of this act, or who shall violate or fail to comply with any regulations made pursuant to this act, shall be guilty of a misdemeanor and shall be fined. The complaint here is, not of the violation of any regulation made by the Secretary of Agriculture, but of a violation of the treaty, and in the first part of the act it forbids the hunting or killing of migratory birds protected by the treaty. The treaty itself provides: "The close season on migratory game birds shall be between March 10th, and September 1st." Prior to that agreement as to the closed season is the agreement that—

"The high contracting powers declare that the migratory birds included in the terms of this convention shall be as follows."

Then there are three classes: First, migratory game birds; second, migratory insectivorous birds; and, third, migratory nongame birds. Under the first heading, "migratory game birds," a definition is made including in the treaty, by name, a number of species of birds, among which are "pigeons, including doves and wild pigeons." This is the vital part, it seems to me, of the law relied upon to sustain this indictment.

It is needless to say, of course, that the treaty, being a solemn agreement of the United States made with another power, is to be scrupu-

lously observed and fairly interpreted, and faithfully applied both by this government and the courts, and every citizen is involved in the faithful upholding of any treaty we make with any foreign country. The question is whether or not the words of this treaty, which is simply followed by the act, prohibit the killing, prior to September 1st, of the doves described in this indictment and spoken of in this evidence.

[1] I am of the opinion that the purpose of this treaty was to deal only with migratory birds. I do not think there was any effort to protect migratory birds by covering others. That might have been a possible power, under the argument made here; but the mention of all these birds is in the definition of migratory birds and a part of it.

[2] I have been much interested in the argument that there may be distinct varieties of birds within some of these definitions that are indisputably nonmigratory, and that an attempt to regulate them would be in excess of the treaty-making power and an invasion of some reserved power of the states. That argument is applied to ground doves which, from this evidence, appear never to have been anywhere in the neighborhood of Canada, or to mocking birds, which are insectivorous perchers, and which likewise are not shown ever to be found far north. If the case concerned them, it seems to me it would present an interesting and perhaps a serious question. But this mourning dove mentioned in the indictment and spoken of in the evidence as a mourning or turtle dove does not appear to belong to such a distinct variety, so well established to be nonmigratory as to be comparable with those two. I think what this treaty means to say is this: Our purpose is to deal with migratory birds, but we do not want it left up in the air; we don't want it subject to uncertainties that will inevitably arise, and differences of opinion that will exist in various localities; we don't want hunters or birds under uncertainties of that sort, but we will proceed to examine and find out and agree as to what kind of birds we are talking about; and they mentioned doves. The evidence indicates that there are only two living varieties of doves, this mourning dove or turtle dove, and the ground dove. If, as contended by the defendant, the ground dove ought not to be considered in the treaty, then it could not have meant by "doves" anything except the mourning dove or turtle dove. He is the only dove left that the makers of it could have meant.

Now it may be that there are individuals or families of doves that do not actually migrate, yet this evidence throughout, by every witness, states that it is impossible to tell a migratory from a nonmigratory one. You cannot, even after killing him, tell which you have killed, much less can you tell before you shoot. I think that this treaty plainly states that it is agreed that doves (which certainly must have included turtle or mourning doves if it included any) are migratory. If it be possible that it could be established that there are varieties so clearly nonmigratory that they ought not to have been included or that they were not included, that that cannot be said of the variety of dove we are dealing with, because he is certainly migratory in certain parts of the country, because he leaves there entirely at certain seasons. He

may be nonmigratory here, because his habits vary unquestionably. He probably resides here to some extent all the year around, though nobody can demonstrate that.

[3-6] So the case is that the treaty-making power said doves are migratory, and this evidence fails to establish that they are not, or that any distinct variety of them is clearly nonmigratory. It seems to me clearly that it is the duty of the court to say and find that the effect of the treaty, ratified by the Senate and backed by this act of Congress, and then reinforced by the interpretation of the Secretary of Agriculture, who was the executive officer selected to enforce it, is to say expressly that the mourning doves of Georgia are migratory. That being true, the question raised cannot be heard in any court before a jury. I can see that this evidence, taken as a whole, may show that there may be a doubt as to whether mourning doves killed in Georgia have migrated or not. That is as far as it can go. Then, if that is in dispute, can it be said that no legislative power exists to prohibit their killing? To illustrate what is in my mind, if the Legislature of Georgia, in an attempt to keep down the boll weevil, should legislate against the killing of quail—I don't know whether quail are insectivorous or not; I know they eat grain and I think they eat insects. But suppose a man were to come into court and say:

"My quail are not that sort. They don't eat insects. In fact, they never saw a boll weevil, and I know my quail don't eat insects."

That is the very point that the Legislature has settled, though, and it does not lie in the mouth of any citizen to raise the issue. And I think this treaty is almost in that condition, except that there might be limits to the treaty-making power that are not on the Georgia Legislature. But I do not think those limits appear to be so clearly transgressed by the treaty here as to make this a question for a jury. I think it will have to be treated, under the evidence here as to turtle or mourning doves in this country, as being a matter established by law that they are migratory and cannot be killed contrary to the provisions of this treaty and of the act of Congress and the regulations of the Secretary of Agriculture.

Entertaining that view, gentlemen, I do not think there is any issue that can be submitted to the jury here except the single one of whether or not the defendant did hunt or kill mourning doves. If he did, then that they are migratory birds, as alleged in the indictment, follows as a matter of law, and the only question of fact that we have here in the case is whether or not the defendant, prior to September 1st, or on the date named in this indictment, killed mourning doves or hunted them.

## Charge to the Jury.

Gentlemen of the Jury: This indictment has three counts in it, charging the defendant with hunting, killing, and possessing mourning doves, migratory birds, contrary to the act of Congress and treaty made between the United States and the kingdom of Great Britain forbidding the killing of them prior to September 1st, or between

March 10th and September 1st. He pleads not guilty to the charge, and that is the issue you are to try.

The fact is that in 1916 the United States, through the President and the Senate, acting in conformity with the Constitution, and of course by the consent of the states that made the Constitution, negotiated a treaty and agreement with Great Britain whereby certain matters affecting the migration of birds between Canada and the United States were to be settled and determined by agreement rather than in any other way. The making of these agreements with foreign nations is left, by the laws of this Union, to the President and the Senate. No state of this Union has any right to make any agreement whatever with any foreign country, because if there is any dispute or any fighting with a foreign country the United States has to do it, under the Constitution, and not the states. And with the purpose largely of avoiding disputes and disagreements and fights, the whole matter of dealing with them by treaties has been left to the President to negotiate the agreement and to the Senate to ratify and confirm, and after that it becomes binding and a part of the supreme law of this country; higher than the state laws; it is as high as the acts of Congress and a part of the supreme law of the land.

Now in this matter a treaty was made in 1916, between Great Britain and the United States, and that agreement was that from March 10th to September 1st there should be no killing in either country or any destruction by their citizens of various birds that were described therein as migratory birds. But the agreement went further than that and undertook to settle what were to be considered as migratory birds both in Canada and in the United States. Under this treaty, among the birds that they agreed to consider migratory birds were doves, with no description added—just the plain word "doves." Each of the parties agreed that their Legislatures should enact laws that would enforce and carry out all these agreements in each of the two countries, and Congress did enact a law making it a misdemeanor, punishable by a fine, for any person to do any act in contravention of this treaty. And that brings you to the charge made here, that this defendant, in contravention of that act and of that treaty, did, in August, which of course was prior to September 1st, kill doves, which are described as mourning doves.

[7] The only issue made in the case, after the ruling I have made as to what the law is, is whether or not you are satisfied beyond a reasonable doubt that he killed mourning doves prior to September 1st, or in August as it is charged in this indictment. If he did, then I charge you as a matter of law, by which I am bound and you are bound, that they are migratory birds. You need not consider the question whether or not they actually went out of Georgia, or were raised in Georgia, or whether they came from Canada or anywhere else at all. If they were mourning doves, they were migratory birds, as settled by this treaty, which became the law upon its adoption by the Senate and is backed by this act of Congress and we are bound by it.

[8] As to what a mourning dove is, you have heard the evidence on that question, and the contention of the government is that all doves,

except this little ground dove that is found in Florida, are mourning doves. There was some evidence claiming that there was in Georgia some distinct sort, they were not given any special name, but the witnesses said they knew them as "doves." The only question left in the case is as to whether or not you are convinced that the defendant killed mourning doves as alleged in the indictment. Any doves would be included in the treaty, but this indictment says "mourning doves," so he could not be convicted under this indictment unless it was mourning doves. It is for you to say whether or not you believe under the evidence in this case that he killed mourning doves, and, if so, I charge you as a matter of law that, under the treaty, they are migratory birds, and it is against the law to kill them before September 1st. If the defendant did that, you will be authorized to find him guilty under any one of these counts, or all of them, that for hunting, or killing, or having them in his possession, whichever you find to be true. If you find that he did not kill mourning doves, as charged, of course you will find him not guilty. Write on the indictment, "We the jury find the defendant guilty under" No. 1, or No. 2, or No. 3, or all, as you find, and if you find him not guilty of any, you will return a verdict of not guilty.